465 S.E.2d 257

**STATE of West Virginia ex rel. Robert E. MORGAN, Relator,**

v.

**George TRENT, Warden, Mt. Olive Correctional Center, Respondent.**

**Larry F. DEAN, Petitioner Below, Appellant,**

v.

**William C. DUNCIL, Warden, Huttonsville Correctional Center, Respondent Below, Appellee.**

Nos. 22886, 22847.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Nov. 17, 1995.

**260**

John Boothroyd, Assistant Public Defender, Charleston, for Relator.

Silas B. Taylor, Managing Deputy Attorney General, Charleston, for Respondent and Appellee.

D. Conrad Gall, Fairmont, for Appellant.

MILLER, Justice: [1]

These two cases are consolidated for purposes of appeal because they involve the same issue. Both relators [2] were convicted under W.Va.Code, 61–8B–3(a) (1991), which provides, in relevant part, that "[a] person is guilty of sexual assault in the first degree when ... [s]uch person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less." [3] They claim the State failed to prove the victims were eleven years old or less.

The parties agree that in the Morgan case the victim was eleven years and eight months old at the time the assault occurred in 1985. In the Dean case, the victim was approximately the same age as the victim in Morgan at the time the assault occurred in 1986. Both relators argue that because the victims were over the age of eleven, their convictions are invalid. They assert that under the statutory language a crime is only committed if the victim is eleven years old or less. Consequently, they argue once a person reaches his or her eleventh birthday, he or she has already lived eleven years and any time after the eleventh birthday makes such person beyond the age of eleven. The State counters with the argument that the common meaning of being eleven years of age encompasses those months until the person reaches the twelfth birthday. For the following reasons, we agree with the State's position.

**I.**

Both relators concede that the age issue, which is essentially a question of statutory construction, was not raised at their criminal trials, which occurred in different counties in 1986. Nor was the issue raised on the ap-

---

1. Pursuant to an Administrative Order entered by this Court on September 11, 1995, retired Justice Thomas B. Miller was recalled for the September 1995 term because of the retirement of Justice W.T. Brotherton, Jr.

2. Larry F. Dean is actually an appellant, having appealed from the denial of habeas corpus relief by the Circuit Court of Marion County. Robert G. Morgan filed an original petition for a writ of habeas corpus with this Court after we granted Larry Dean's appeal. Because both cases arise from habeas corpus proceedings, for purposes of these proceedings, we will refer to both Mr. Dean and Mr. Morgan as relators.

3. WVa.Code, 61–8B–3, in its entirety, states:

"(a) A person is guilty of sexual assault in the first degree when:

"(1) Such person engages in sexual intercourse or sexual intrusion with another person and, in so doing:

"(i) Inflicts serious bodily injury upon anyone; or

"(ii) Employs a deadly weapon in the commission of the act; or

"(2) Such person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less.

"(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than fifteen nor more than thirty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than fifteen nor more than thirty-five years."

peals of their criminal convictions to this Court, which appeals were denied. The relators, however, claim that under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and its progeny, a constitutional error exists because the State failed to prove all the essential elements of the crime under W.Va.Code, 61–8B–3(a)(2). The missing element was proof that the victims were just eleven years old or less as the State's evidence showed both victims were eleven years and eight months old. In *Jackson*, the United States Supreme Court posed this question, which it answered in the affirmative:

> "This is the first of our cases to expressly consider the question whether the due process standard recognized in *[In re] Winship* [, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." 443 U.S. at 313–14, 99 S.Ct. at 2786, 61 L.Ed.2d at 570.

■ This fundamental due process point has been impliedly recognized by this Court as evidenced by Syllabus Point 7, in part, of *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994):

> " 'In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged....' Syllabus Point 4, *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976)[.]"

*See also State v. Stacy*, 181 W.Va. 736, 741, 384 S.E.2d 347, 352 (1989).

Moreover, in a number of cases, we have utilized the doctrine of plain error to examine unobjected error that is prejudicial to a defendant and may have materially affected the outcome of the criminal proceeding. *See, e.g., State v. Mayo*, 191 W.Va. 79, 443 S.E.2d 236 (1994) (unconstitutional instruction involving a presumption to supply proof of an element of the crime); *State v. Stacy, supra* (failure to instruct on the underlying felony in a felony murder case); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (defective instruction on aggravated robbery).

■ In our recent case of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we addressed the elements of the plain error doctrine found in Rules 30 and 52(b) of the West Virginia Rules of Criminal Procedure.[4] This analysis was done following the United States Supreme Court's discussion in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), of the plain error doctrine which is contained in Rules 30 and 52(b) of the Federal Rules of Criminal Procedure.[5] In Syllabus Points 7, 8, and 9 of *Miller*, we extracted the essence of the plain error doctrine following *Olano*'s methodology:

> "7. To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.
>
> "8. Under the 'plain error' doctrine, 'waiver' of error must be distinguished

---

**4.** Rule 30 provides, in relevant part:

> "No party may assign as error the giving or the refusal to give an instruction or to the giving of any· portion of the charge unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objection; but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection."

Rule 52(b) states: *"Plain Error.* Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**5.** In *State v. England, supra,* we noted that our Rules 30 and 52(b) were patterned after their federal counterparts. We made this summary in Syllabus Point 4:

> "The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

from 'forfeiture' of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is 'plain.' To be 'plain,' the error must be 'clear' or 'obvious.'

"9. Assuming that an error is 'plain,' the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice."

■ In the context of this case, it is clear that if the relators' view of our first degree sexual assault statute is correct, then the relators' convictions would be void because the victims were over the age of eleven by some eight months. This would meet the plain error doctrine set out in *Miller* because the age of the victims was a substantial element of the crime. The error was plain, affected substantial rights, that is, proof of an element of the crime, and seriously affected the fairness and integrity of the judicial system. Moreover, there is no showing that the relators waived this error at their trials as contemplated by Syllabus Point 8 of *Miller*.[6] Finally, as we have already discussed, the error affected substantial rights of the relators since there was a lack of proof of an essential element of the crimes, i.e., the proper age of the victims.

However, up to this point, we have assumed the correctness of the relators' interpretation of the age issue under W.Va.Code, 61–8B–3(a)(2), in order to make the preliminary analysis of plain error under *Miller*. It was on this basis that both cases were accepted for full argument, coupled with the practical necessity of resolving this issue for the benefit of the lower courts.[7] It should be understood that in the future we do not intend to consider every issue regarding a criminal statute to be a plain error.

## II.

■ As earlier noted, the parties agree that the sole issue in this consolidated case is one of statutory construction of the phrase in W.Va.Code, 61–8B–3(a)(2), that the victim must be "eleven years old or less." It is generally recognized that in construing an ambiguous criminal statute, the rule of lenity applies which requires that "[p]enal statutes must be strictly construed against the State and in favor of the defendant." Syl. pt. 3, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970). The rationale for the rule of lenity is to preclude "expansive judicial interpretations [that] may create penalties for offenses that were not intended by the legislature." *State v. Brumfield*, 178 W.Va. 240, 246, 358 S.E.2d 801, 807 (1987). *See also State v. Choat*, 178 W.Va. 607, 616, 363 S.E.2d 493, 502 (1987). The United States Supreme Court made this observation in *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1002, 108 L.Ed.2d 132, 140 (1990): "[The rule of lenity] serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability."

■ The need for fair warning is but another expression of what is termed the "void for vagueness" doctrine in construing penal statutes which is patterned on constitutional due process concepts, as explained in *United States v. McAusland*, 979 F.2d 970,

---

6. The State argues that Mr. Morgan waived the age claim because in his earlier habeas corpus proceeding he was asked if he had raised all issues that he wanted to raise and had responded "yes." We do not believe this is the type of specific, knowing, and intelligent waiver required by Syllabus Point 8 of *Miller*.

7. The State's brief advises that two circuit courts have decided this issue in favor of the relators and a third circuit court has ruled in favor of the State's position.

975 (4th Cir.1992), *cert. denied,* 507 U.S. 1003, 113 S.Ct. 1642, 123 L.Ed.2d 264 (1993):

"The Due Process Clause requires that laws 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and provide 'explicit standards for those that apply them.' *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222[, 227] (1972)."

This doctrine was discussed in *State v. Blair,* 190 W.Va. 425, 438 S.E.2d 605 (1993), where we concluded in Syllabus Points 1 and 3:

"1. 'A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syl. pt. 1, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974).

\* \* \* \* \* \*

"3. 'Criminal statutes, which do not impinge upon First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by construing the statute in light of the conduct to which it is applied.' Syl. pt. 3, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974)."

*See also State v. DeBerry,* 185 W.Va. 512, 408 S.E.2d 91, *cert. denied,* 502 U.S. 984, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991); *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970).

### III.

 Although the rule of lenity applies where a criminal statute contains ambiguous language, it does not mean that words of common understanding and usage may be deemed ambiguous. Moreover, lenity does not foreclose a court from looking "not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon,* 494 U.S. at 158, 110 S.Ct. at 1001, 108 L.Ed.2d at 140. This principle of statutory construction is echoed in Syllabus Point 2 of *State v. White,* 188 W.Va. 534, 425 S.E.2d 210 (1992):

"'"In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984)."

Thus, lenity allows us to consider relevant amendments that have been made to the particular criminal statute under inquiry. Nor do we believe that lenity can be extended to mean that a statute can be construed so literally that an absurd result will occur that defies common sense, as we stated in Syllabus Point 2 of *Pristavec v. Westfield Insurance Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990):

"'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)."

 Prior to its revision in 1984, W.Va. Code, 61–8B–3(a)(3) (1976), defined first degree sexual assault when "being fourteen years old or more, [the defendant] engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old." [8] This phrase "less than eleven years old" sets a limit of less than or under eleven years of age. Under this language, it is apparent that once a person reached his eleventh birthday, such individual was not within the statutory age limit. Consequently, the first degree sexual assault language under W.Va.Code, 61–8B–3(a)(3) (1976), was not applicable to a person age eleven or over.

---

**8.** The term "he" was defined in W.Va.Code, 61–8B–1(10) (1976): "'He' includes any human being."

Under the 1984 revision to W.Va.Code, 61–8B–3(a)(2), this language was changed to "who is eleven years old or less." The obvious significance of this revision was to include those who are eleven years old. The adding of the conjunctive "or less" to the phrase is meant to signify that those who are less than eleven years old are also included within the class who are covered in W.Va.Code, 61–8B–3(a)(2) (1984). Were this conjunctive not in the statute, the crime would only cover those who were age eleven.

When we view the other age changes to the sexual offense article by the 1984 Legislature, we find that sexual abuse in the first degree under W.Va.Code, 61–8B–7(a)(3) (1984), contains the same phraseology "[s]uch person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less." The 1984 revision made the same alteration to the earlier language that read "who is incapable of consent because he is less than eleven years old." W.Va.Code, 61–8B–7(a)(3) (1976). Again, we can conclude that the 1984 legislative revision to the sexual abuse in the first degree statute had a similar purpose as the same revision in the first degree sexual assault statute. This purpose was to extend the age period of the victim to those who are eleven years old. Obviously, the policy behind these legislative changes was to broaden the age requirement by extending the age of the class of victims covered by the statute.

It would be irrational to conclude that the Legislature in making the 1984 amendment, which extended the class of victims from "less than eleven years old" to those "eleven years old or less" intended that age eleven ended the day the child reached an eleventh birthday, as the relators suggest. Such a result would mean that the Legislature through its 1984 amendment intended only to add on a day to the age of the victim's class, i.e., the eleventh birthday. We are mindful of *Pristavec*'s Syllabus Point 2 that abjures us not to reach a construction that "would lead to injustice and absurdity." As the State points out, this argument could be even more narrowly made such that age eleven

could not extend for any period after the child's actual time of birth on the day of the eleventh birthday.

This age issue has arisen in other jurisdictions involving sexual offense cases and the decisions are not harmonious, mainly because of the difference in statutory language. *See* Annot., 73 A.L.R.2d 874 (1960). For instance, the Ohio Supreme Court in *State v. Maxson*, 54 Ohio St.2d 190, 375 N.E.2d 781 (1978), dealt with its sexual offense statute which referred to the victim's age as "over twelve but not over fifteen years of age." The court, without any detailed discussion, held that "not over fifteen" meant the person had not passed the fifteenth birthday. Obviously, the phrase "not over fifteen" can reasonably be said to end on the fifteenth birthday. Our statute does not contain such an explicit "not over eleven" restriction.

In *State ex rel. Slatton v. Boles*, 147 W.Va. 674, 130 S.E.2d 192 (1963), we held our statutory juvenile court jurisdiction, except for a capital offense, was exclusive for a person who was under age sixteen. The pertinent language was "exclusive jurisdiction" to determine charges against persons "under the age of sixteen years." Syl. pt. 5, *Boles*. Consequently, we held if the offense was committed prior to the sixteenth birthday, the trial had to be held in juvenile court. *See also State ex rel. Taylor v. Boles*, 147 W.Va. 701, 130 S.E.2d 693 (1963). In the juvenile court context, both Alaska and Delaware had statutes that allowed juveniles over the age of sixteen to be tried as adults. Their supreme courts held that once the juvenile was passed his or her sixteenth birthday when the offense was committed, he or she was subject to adult jurisdiction. *See State v. Linn*, 363 P.2d 361 (Alaska 1961); *Farrow v. State*, 258 A.2d 276 (Del.1969). The use of the terms "over" or "under" a certain age is manifestly more certain in limiting the class of victims than our statute that only states the age as is the case of W.Va.Code, 61–8B–3(a)(2). The relators cite other cases in the same "under" or "over" age category, which we find analogous to our 1976 language of "less than eleven years old." [9] These cases

---

**9.** *See, e.g., People v. Dudley*, 53 Cal.App.2d 181, 127 P.2d 569 (1942) (under the age of fourteen), abrogated by *In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993) (manner of

are involved with different statutory language which is more restrictive than our current first degree sexual assault statute.

We acknowledge that in several jurisdictions where the sexual offense statutes applied to a person of a given age or under, courts have held that if the victim is beyond the stated age, then he or she is not covered under the statute. *See Knott v. Rawlings,* 250 Iowa 892, 96 N.W.2d 900 (1959) (age sixteen years or under); *State v. McGaha,* 306 N.C. 699, 295 S.E.2d 449 (1982) ("twelve years of age" means once child passes twelfth birthday, the child is over twelve); *State v. Collins,* 543 A.2d 641, 645 (R.I.1988) (thirteen years of age or under "said term applied to persons under thirteen years of age and to those who are exactly thirteen years old").

■ We find these cases to be artificially constrained from what we believe is a common sense meaning of the term "eleven years old or less." The Tennessee Supreme Court in *Covell v. State,* 143 Tenn. 571, 227 S.W. 41 (1921), considered the ambit of the phrase "between the ages of seven and sixteen years, inclusive" and held that a child age sixteen years and six months was within the statute. The court in *Covell* stated: "It is technically true that one reaches a particular age at a fixed or certain point of time, but, having attained the designated birthday, one's age, as ordinarily alluded to, continues as of the latter birthday until the succeeding one is reached." 143 Tenn. at 572, 227 S.W. at 41.

The Nebraska Supreme Court considered this question in *State v. Carlson,* 223 Neb. 874, 394 N.W.2d 669 (1986), where its sexual assault statute classified the victim as "fourteen years of age or younger," and referred to *Phillips v. State,* 588 S.W.2d 378 (Tex. Crim.App.1979), whose state criminal statute referred to a "child who is 14 years of age or younger." The *Phillips* court concluded that a child who was fourteen years and one month old met the statutory criteria and made this observation about the common law. "[T]he old common law rule [is] that a person attains a given age at the last moment of the

day preceding the anniversary of birth." 588 S.W.2d at 380. The Nebraska court in *Carlson, supra,* came to this conclusion:

"If 'less than fourteen years of age' or 'under fourteen years of age' had been used in § 28–320.01, the protection of that statute would terminate when a child reached the 14th birthday. Because 'less than' or 'under' is absent from § 28–320.01, while 'fourteen years of age or younger' appears in the statute, the compelled logical conclusion is that the statute's protection extends into and throughout the year immediately following a person's 14th birthday. When the plain and unambiguous language of § 28–320.01 is considered, ... to the ordinary person 'fourteen years of age' means that one has passed the 14th birthday but has not reached the 15th birthday." 223 Neb. at 880, 394 N.W.2d at 673–74. (Citation omitted).

We agree with these observations of the Nebraska court not only because they confirm our earlier analysis, but because they represent a common sense analysis of what the ordinary person would deem the phrase "fourteen years of age or less" would mean. Moreover, as we pointed out earlier, the 1984 amendment broadens the age category from "under eleven years of age" to "eleven years old or less." Prior to the 1984 amendment, children eleven years old were not covered. To say that the 1984 amendment added only one day to the statutory coverage, i.e., the eleventh birthday, is to reach the realm of absurdity. Common sense dictates that the age of eleven extends beyond the eleventh birthday to include those months until age twelve is reached.

Therefore, we hold that the language of W.Va.Code, 61–8B–3(a)(2), that identifies the victim of sexual assault in the first degree as a person "who is eleven years old or less" applies to a person who is eleven years old, but who has not reached his or her twelfth birthday.

### IV.

For the foregoing reasons, we deny the writ of habeas corpus sought by Robert G.

calculating age); *Davis v. State,* 152 Ga. 320, 110 S.E. 18 (1921) (under the age of fourteen); *In re*

*Application of Smith,* 351 P.2d 1076 (Okla.Crim. 1960) (over eighteen years of age).

Morgan, and we affirm the judgment of the Circuit Court of Marion County in the appeal of Larry F. Dean.

No. 22886—Writ denied.

No. 22847—Affirmed.

ALBRIGHT, J., did not participate.